BRIAN L. BUDSBERG, WSBA#11225
Budsberg Law Group, PLLC
P.O. Box 1489
Olympia, WA 98507-1489
Telephone: (360) 584-9093
Facsimile: (360) 252-8333
Attorney for Creditor

JUDGE KAREN OVERSTREET
Location Seattle
Chapter 11
**Hearing Date: April 29, 2011**
**Hearing Time: 9:30 a.m.**
**Response Date: April 27, 2011**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

SYNERGISTIC ENTERPRISES, INC.
SUSTAINABLE ENTERPRISES, LLC.

Debtors.

No. 10-23256
No. 10-23257

NOTICE & MOTION TO STRIKE CONTESTED CONFIRMATION HEARING

**NOTICE**

TO: CLERK OF THE COURT
AND TO: DEBTORS' ATTORNEY
AND TO: U. S. TRUSTEE'S OFFICE
AND TO: PARTIES REQUESTING SPECIAL NOTICE

YOU AND EACH OF YOU, are hereby given notice pursuant to LR 9013-1(d)(2)(F) that Charles Utterback and Trust Company of America (collectively, "Creditor") by and through its attorney of record, has filed a motion pursuant to 11 U.S.C. §1129(b)(1), FRBP 9013, and LR 9013-1, seeking entry of an order striking the contested confirmation hearing scheduled for May 3rd.

The hearing on Creditor's Motion to Strike Confirmation Hearing will be heard on shortened time on April 29, 2011 in the United States Bankruptcy Court located at 700 Stewart

CREDITOR'S MOTION TO STRIKE
CONFIRMATION HEARING SCHEDULED
FOR MAY 3RD, 2011
P a g e | **1**

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

St., Courtroom 7206, Seattle, WA 98402, and the Clerk is requested to note the motion on the motion calendar for that date.

IF YOU OPPOSE the motion, you must file your written response with the Clerk of the Court, send two(2) copies to the judge's chambers and deliver a copy to the undersigned NOT LATER THAN April 27, 2011. In the absence of an objection, the Court will be requested to grant the relief as requested herein. A complete copy of the motion and supporting documents may be obtained by written request to Budsberg Law Group, PLLC and shall also be available with the office of the Clerk of the United States Bankruptcy Court, or can be obtained through Pacer at the Court's web site.

## MOTION

COMES NOW, Creditor Charles Utterback and Trust Company of America ("TCA"), by and through his attorney of record, Brian L. Budsberg, pursuant to LR 3020-1(b) and hereby submits this motion to strike the contested confirmation hearing presently scheduled for May 3rd. Based upon the ballot analysis filed on April 13th, the proposed plan cannot be confirmed as a matter of law. Because the plan as drafted cannot be confirmed as a matter of law, there is no need for the Court to take extensive testimony on May 3rd.

This objection is based upon the previous objection filed by TCA (**Dkt. #42**), the files and records herein incorporated by this reference, and any other matters the Court may or must take judicial notice of pursuant to ER 201(c) & (d).

## JURISDICTION

Confirmation of a Chapter 11 plan is a core matter under 28 U.S.C. § 157(b) over which this court has jurisdiction to enter a final order. This court has jurisdiction over Debtors' Chapter 11 case pursuant to 28 U.S.C. § 1334 and 157(a).

CREDITOR'S MOTION TO STRIKE
CONFIRMATION HEARING SCHEDULED
FOR MAY 3RD, 2011
P a g e | **2**

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

## ANALYSIS

Debtor has filed an Amended Plan. (**Dkt. #32**). A Confirmation hearing is scheduled for May 3rd in front of Judge Overstreet. (**Dkt. #35**). Ballots and Objections were due by April 1st. **Id**. TCA timely filed an objection to the original proposed plan (**Dkt. #25**), and timely filed an objection to the Amended Plan with a request for an evidentiary hearing (**Dkt. #42**).

TCA is a Class 4 secured claim holder in this case and voted to reject the Plan as proposed (**Dkt. # 52**). No other creditors have filed ballots. **Id**.

In order for a chapter 11 plan to be confirmed, the plan proponent must demonstrate, by a preponderance of the evidence, that the requirements of § 1129 are satisfied. *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms),* 177 B.R. 648, 654 (9th Cir.BAP1994), *aff'd,* 85 F.3d 1415 (9th Cir.1996) *cert. denied* 519 U.S. 1054 (1997).

The plan is not confirmable because the debtor in this case cannot satisfy either § 1129(a)(8) or § 1129(a)(10). Where no impaired class of claims accepts the proposed plan, this fact standing alone, precludes confirmation. *In re Willows Convalescent Centers Limited Partnership,* 151 B.R. 220 (D.Minn.1991); *In re Polytherm Industries, Inc.,* 33 B.R. 823 (W.D.Wis.1983); *In re Dunes Hotel Associates,* 188 B.R. 174 (Bankr.D.S.C.1995); *In re Russell,* 44 B.R. 452 (Bankr.E.D.N.C.1984). A plan proposed by the debtor is not confirmable, if it is not feasible within the meaning of 11 U.S.C. § 1129(a)(11), is commercially unreasonable, **no impaired class had accepted the Plan**, and the proposed treatment of the claims is not fair and equitable. *In re In re Northern Outer Banks Associates, LLC*; Slip Copy, 2010 WL 4643721 (Bkrtcy.E.D.N.C., Nov. 2010. (*See also* attached **Addendum** *In re Leeward Subdivision Partners, LLC,* Slip Copy, 2010 WL 6259983 (9th Cir.BAP (Wash.), 2010)). In the *Leeward* case, the Debtor could not meet its burden because there was no consenting class of impaired

CREDITOR'S MOTION TO STRIKE  
CONFIRMATION HEARING SCHEDULED  
FOR MAY 3RD, 2011  
P a g e | **3**

BUDSBERG LAW GROUP, PLLC  
P.O. Box 1489  
Olympia, Washington 98507  
360-584-9093

claims that accepted the Plan. As noted in the first page of the decision, the case is not being cited, and is only being referred to for whatever informational or persuasive value it may have; it has no precedential value. *See* 9th Cir. BAP Rule 8013-1.

§1129(b)(1) of the Bankruptcy Code requires that at least one impaired class must accept a plan for a cramdown to occur. According to the ballot analysis (**Dkt. #52**), no impaired classes have voted for the Plan. TCA is the only creditor in an impaired class who voted, and it rejected the Plan. There are no other impaired classes to satisfy the requirements of §1129(a)(10), which requires that at least one impaired class must accept a plan. There is no other impaired class besides TCA, so there is no one to vote in favor to satisfy §1129(a)(10). As drafted, the Plan cannot be confirmed as a matter of law.

## **RELIEF REQUESTED**

That the Court strike the hearing scheduled for May 3rd, and enter an order denying confirmation of the Debtor's proposed Chapter 11 Plan.

DATED this 19th day of April, 2011

/s/ Brian L. Budsberg
BRIAN L. BUDSBERG, WSBA#11225
ATTORNEY FOR CREDITOR

CREDITOR'S MOTION TO STRIKE
CONFIRMATION HEARING SCHEDULED
FOR MAY 3RD, 2011
P a g e | **4**

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

# EXHIBIT A

Slip Copy, 2010 WL 6259983 (9th Cir.BAP (Wash.))
[Judges and Attorneys](#)
Only the Westlaw citation is currently available.

NOT FOR PUBLICATION

United States Bankruptcy Appellate Panel,
of the Ninth Circuit.
**In re LEEWARD SUBDIVISION PARTNERS, LLC, Debtor.**
**Leeward Subdivision Partners, LLC, Appellant,**
**v.**
**GDR Lending, LLC, Appellee.**
BAP No. WW–10–1060–HRuJu.
Bankruptcy No. 09–18457–TTG.
Argued and Submitted on May 21, 2010.
Filed June 11, 2010.

Appeal from the United States Bankruptcy Court for the Western District of Washington, Honorable [Thomas T. Glover](#), Bankruptcy Judge, Presiding.
**Before: HOLLOWELL, [RUSSELL](#)[FN1] and [JURY](#), Bankruptcy Judges.**

[FN1.](#) Hon. David E. Russell, Bankruptcy Judge for the Eastern District of California, sitting by designation.
**MEMORANDUM[FN2]**
[FN2.](#) This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have ( *see* [Fed. R.App. P. 32.1](#)), it has no precedential value. *See* 9th Cir. [BAP Rule 8013–1](#).

**PER CURIAM.**

  *1 Leeward Subdivision Partners, LLC (Leeward) is a single asset real estate debtor who filed a chapter 11 [FN3](#) bankruptcy petition to stave off foreclosure on its property. Leeward proposed a chapter 11 plan, which drew an objection from its primary secured lender, and which garnered no votes by any impaired class. At a combined confirmation hearing and hearing on the secured creditor's motion for relief from stay, the bankruptcy court dismissed Leeward's bankruptcy case sua sponte. In the order denying confirmation and dismissing the case, it also barred Leeward from refiling a bankruptcy case for a period of 90 days. Leeward appeals, contending that the bankruptcy court had no authority to dismiss the case sua sponte or bar refiling without giving Leeward notice and an opportunity to be heard.

[FN3.](#) Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, [11 U.S.C. §§ 101](#)–[1532](#), and to the Federal Rules of [Bankruptcy Procedure, Rules 1001](#)–[9037](#).

  For the reasons set forth below, we **AFFIRM** the bankruptcy court's denial of confirmation and sua sponte dismissal, but **VACATE** the portion of the order that bars Leeward from refiling a bankruptcy case for a period of 90 days.

## I. FACTS

Leeward is a real estate developer whose sole asset is a 12–acre parcel of land near the ferry terminal in Anacortes, Washington (the Property). The Property consists of a west side (waterfront) parcel and an east side parcel. Leeward has spent over seven years acquiring and developing the Property. At the time of the petition date, the Property was surveyed and platted for three large condominium complexes (two on the west side) and 23 single-family homes.

Leeward and GDR Lending LLC (GDR) initially entered into a partnership, in which GDR financed and managed Leeward's development efforts for the Property. However, GDR terminated the partnership after six months and the parties' relationship converted to that of creditor-debtor pursuant to a Loan Request Commitment (the Loan) and promissory note in favor of GDR for $4.6 million, secured by a first position deed of trust on the Property. Among other things, the Loan provided for a full payment balloon due in October 2007, which was later extended until October 2008. The Loan funds were disbursed to Leeward in advances beginning in August 2006, and ending July 30, 2008.

Leeward made no payments on the Loan. In the summer of 2009, GDR commenced non-judicial foreclosure proceedings; a trustee's sale was scheduled for August 21, 2009. On August 20, 2009, Leeward filed its chapter 11 bankruptcy petition.

Leeward owed GDR $5,763,176 as of November 12, 2009. On November 18, 2009, Leeward filed a combined plan of reorganization (the Plan) and disclosure statement (Disclosure Statement).[FN4] In the Plan and Disclosure Statement, Leeward asserted the Property had a value of $17 million. Its valuation was based on its proposed full development of the Property, which included the creation of 14 single-family homes from the condominium site on the upper west side of the Property. In order to finance the efforts necessary in revising the existing permits, restructuring the lots for utilities and drainage, and marketing the lots for sale, Leeward sought a primed postpetition loan of $140,000 from Inward Bound. It filed a motion to incur postpetition financing on October 12, 2009.[FN5]

[FN4.] The Plan provided for 5 classes of creditors: Class 1 Administrative Claims; Class 2 Priority Prepetition Wage Claims; Class 3 Prepetition Tax Claims; Class 4 Secured Creditors, divided into Class 4A for the purported first lien position postpetition lender, Class 4B for GDR, and Class 4C for David Lueche, an alleged second lienholder on the Property; and, Class 5 General Creditors.

[FN5.] The hearing on the motion to incur postpetition financing was continued to the same time as the Confirmation Hearing.

*2 The Plan proposed to treat Inward Bound (if the court granted Leeward's motion to incur postpetition financing) as a "Class 4A Secured Creditor," receiving a first position lien on the east side of the Property and paying Inward Bound from sales after the eventual development of the east side of the Property.[FN6] The Plan also proposed to transfer the west side of the Property to GDR, a "Class 5A Secured Creditor," in full satisfaction of its claim secured by the entire east and west parcels.

[FN6.] Inward Bound has offered to fund further development and buy and service finished sites after the proposed development has been completed.

GDR filed a response to the Disclosure Statement on December 11, 2009, contending that the Property was only worth $3.3 million based upon a commercial appraisal report it submitted along with a declaration from the appraiser (the Montgomery Declaration).[FN7] On December 18, 2009, the

bankruptcy court held a hearing on the adequacy of the Disclosure Statement. [FN8] The bankruptcy court approved the Disclosure Statement and set the confirmation hearing on the Plan for January 22, 2009 (the Confirmation Hearing).

[FN7.] On December 14, 2009, Leeward filed a "Chapter 11 Plan, Plan B," although it was not sent to creditors for consideration and no disclosure statement for Plan B was ever filed or approved. Plan B proposed to pay GDR $3.3 million in full satisfaction of its claim.

[FN8.] No transcript of the hearing was submitted in the record on appeal.

On December 22, 2009, GDR filed a motion for relief from stay (the MRS) and set it for hearing with the Confirmation Hearing (MRS Hearing). GDR argued that Leeward could not confirm its Plan because GDR would not vote to accept any plan that failed to provide full payment of its claim. The MRS sought relief under §§ 362(d)(2)(B) and 362(d)(3). Leeward did not respond to the MRS.

On January 15, 2009, all ballots and objections to the Plan were due. On that date, GDR filed an objection to the Plan. Also on that date, Leeward submitted an amended plan of reorganization (the Amended Plan). On January 18, 2010, Leeward filed a notice with the bankruptcy court of its intent to seek confirmation of the Amended Plan at the Confirmation Hearing. However, the Amended Plan does not appear to have been sent to creditors for voting purposes. The Amended Plan altered the Plan's development idea in that it proposed to further subdivide the west and east side parcels for development and sale in order to generate sufficient proceeds to pay off GDR.

Despite the fact that Leeward had no accepting class of impaired creditors for either plan [FN9], it argued that its Plan and Amended Plan would be confirmable because it had buyers lined up for developed parcels. The developed parcels, however, depended upon revising Leeward's current permits and approvals, which Leeward asserted would be sought at a February 2, 2010 meeting with the City of Anacortes (the City). However, GDR submitted a declaration, the morning of the Confirmation Hearing, from the City's planning department stating there were no submissions by Leeward to meet with the City (the Larsen Declaration). The bankruptcy court denied Leeward the opportunity to rebut the Larsen Declaration with testimony from Leeward's principal.

[FN9.] No separate disclosure statement was filed or approved for the Amended Plan and there is nothing in the record that demonstrates Leeward sent out new ballots for the Amended Plan. Therefore, we assume the "Ballot Analysis" filed by Leeward related to the Plan.

The bankruptcy court ended the Confirmation hearing by stating:

THE COURT: I'm really troubled by the statement of the planning commission that nothing's on the calendar. Somebody's blowing smoke in my ear. I mean, he can testify all he wants—

*3 [LEEWARD:] I'd like to—

THE COURT: No, you're not going to do it. All right. Here's what I'm going to do. No, I'm all done. Here's what I'm going to do in this case. I'll deny confirmation of this plan. We're talking about the original plan here. That's not acceptable. It's not feasible. And I'm going to dismiss this case. It seems to me that this debtor has been just playing around with other people's money for a long period of time. You know, we're so far into a project, and he's just telling us that, Now I might have a preliminary hearing before the council, so then the application can go forward. Nonsense. The case is dismissed.

H'rg Tr., January 22, 2010, at 15: 19–25–16:1–8.

On January 26, 2010, the bankruptcy court entered an Order Denying Confirmation of Plan And Dismissing Case (the Denial Order). The Denial Order denied confirmation of the Plan, dismissed the case, and barred Leeward from filing a petition in bankruptcy for a period of 90 days.

Leeward filed a Verified Motion for Reconsideration (Reconsideration Motion) on February 9, 2010, asserting that it had new evidence in the form of a declaration from the assistant director of planning for the City stating a meeting to review Leeward's revised development plans and begin the permitting application process had taken place. The bankruptcy court denied the Reconsideration Motion without a hearing on February 11, 2010. Leeward timely appealed.

GDR scheduled a foreclosure sale for March 12, 2010. However, on February 23, 2010, Leeward filed with the Bankruptcy Appellate Panel a motion for stay pending appeal. The motion was granted without bond on March 2, 2010.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err by dismissing Leeward's bankruptcy case sua sponte and barring Leeward from refiling for a period of 90 days?

Did the bankruptcy court err in denying the Reconsideration Motion?

## IV. STANDARDS OF REVIEW

The bankruptcy court's decision whether to confirm a proposed plan of reorganization is reviewed for an abuse of discretion, but the determination that the plan satisfies the confirmation requirements necessarily requires the bankruptcy court to make certain factual findings, which are reviewed under a clear error standard. *Computer Task Group, Inc. v. Brotby (In re Brotby),* 303 B.R. 177, 184 (9th Cir.BAP2003); *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 787 F.2d 1352, 1358 (9th Cir.1986). Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Brotby,* 303 B.R. at 184.

The standard for the adequacy of factual findings is "whether they are explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision and to enable it to determine the grounds on which the trial court reached its decision." *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1223 (9th Cir.1999).

*4 We review the bankruptcy court's decision to dismiss a case under an abuse of discretion standard. *Id.* The bankruptcy court's denial of a Rule 60(b) motion is also reviewed under an abuse of discretion standard. *Cossio v. Cate (In re Cossio),* 163 B.R. 150, 153 (9th Cir.BAP1994), *aff'd,* 56 F.3d 70 (9th Cir.1995).

We apply a two-part test to determine whether the bankruptcy court abused its discretion: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson,* 585 F.3d 1247, 1261–63 (9th Cir.2009).

Finally, we may affirm the bankruptcy court on any ground supported by the record. *In re Leavitt,* 171 F.3d at 1223.

## V. DISCUSSION

### A. *Leeward Was Required To File A Plan With A Reasonable Possibility Of Being Confirmed*

Leeward's sole asset is the Property; this is a single asset real estate case. 11 U.S.C. § 101(51B) [FN10]. Under the Bankruptcy Code, single asset real estate debtors are subjected to special requirements.

FN10. "The term 'single asset real estate' means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental." 11 U.S.C. § 101(51B).

In 1994, Congress became concerned about the delay the bankruptcy process had on the rights of secured lenders to foreclose on real property. Therefore, it enacted § 362(d)(3) to minimize the financial risk of secured lenders by requiring single asset real estate debtors with secured debts of less than $4 million to, within 90 days, file a viable plan of reorganization or begin making contractual interest payments. *See generally,* Kenneth N. Klee, ONE SIZE FITS SOME: SINGLE ASSET REAL ESTATE BANKRUPTCY CASES, 87 Cornell L.Rev. 1285, 1291–92 (2002); 11 U.S.C. § 362(d)(3). The failure to satisfy the 90–day deadline resulted in mandatory stay relief for the moving creditor.

In 2001, Congress repealed the $4 million cap. Now, pursuant to § 362(d)(3), all single asset real estate debtors must propose a plan within 90 days, which has a "reasonable possibility of being confirmed within a reasonable time" or pay the secured creditor interest at the contractual non-default rate. If the single asset real estate debtor can do neither, it loses the protection of the § 362(a) stay and "[in] essence, the Chapter 11 case is over." *Id.* at 1308. Thus, the bankruptcy court *must* grant stay relief to a moving creditor if the single asset real estate debtor fails to comply with § 362(d)(3). *Centofante v. CBJ Dev., Inc. (In re CBJ Dev., Inc.),* 202 B.R. 467, 470 (9th Cir. BAP1996).

Section 362(d)(3) was added to "ensure that the automatic stay provision [was] not abused, while giving the debtor the opportunity to create a workable plan of reorganization." *NationsBank, N.A. v. LDN Corp. (In re LDN Corp.),* 191 B.R. 320, 326 (Bankr.E.D.Va.1996) *citing* S.Rep. No. 168, 103rd Cong., 1st Sess. (1993). But where "debtors with little hope of successfully reorganizing delay the bankruptcy process while secured creditors are left helplessly on the sidelines," § 362(d)(3) provides relief. *Id.* at 327.

*5 It is in this context that the Confirmation Hearing took place.

### B. *Leeward's Plan Was Not Confirmable*

In order for a chapter 11 plan to be confirmed, the plan proponent must demonstrate, by a preponderance of the evidence, that the requirements of § 1129 are satisfied. *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms),* 177 B.R. 648, 654 (9th Cir.BAP1994), *aff'd,* 85 F.3d 1415 (9th Cir.1996) *cert. denied* 519 U.S. 1054 (1997).

Leeward could not meet its burden because there was no consenting class of impaired claims that accepted the Plan. Therefore, Leeward could not satisfy either § 1129(a)(8) or § 1129(a)(10). Furthermore, the bankruptcy court determined that the Plan was not feasible and therefore did not satisfy § 1129(a)(11). A plan is considered not feasible if there is no reasonable probability of success. *In re Brotby,* 303 B.R. at 191. "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes...." *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),* 761 F.2d 1374, 1382 (9th Cir.1985).

The bankruptcy court found that there was no reasonable probability of success for Leeward's Plan because it lacked the approvals and permits necessary to effectuate its development proposal:
I'll deny confirmation of this plan.... It's not feasible. And I'm going to dismiss this case. It seems to me that this debtor has been just playing around with other people's money for a long period of time. You know, we're so far into a project, and he's just telling us that, Now I might have a preliminary hearing before the council, so then the application can go forward. Nonsense.
Hr'g Tr., January 22, 2010, at 15: 19–25–16:1–8.

Notably, Leeward does not argue that the bankruptcy court erred in making the determination that the Plan was not feasible. Indeed, Leeward provided no evidence to the bankruptcy court that it had a consenting impaired class, or that it could proceed with the Plan's development proposal. Therefore, the facts presented in the record support the bankruptcy court's finding that the Plan was unconfirmable. Accordingly, the bankruptcy court did not abuse its discretion in denying confirmation of the Plan.

At issue, however, is whether the bankruptcy court's denial of confirmation of the Plan supported its sua sponte dismissal of the bankruptcy case.

### C. *The Bankruptcy Court Had Authority To Dismiss Leeward's Bankruptcy Case Sua Sponte*

A bankruptcy court may dismiss a bankruptcy case under § 305:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if-

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]

11 U.S.C. § 305(a)(1).

Additionally, the dismissal of a debtor's chapter 11 case is dealt with in § 1112, which provides for either the conversion of a chapter 11 case to a chapter 7 case or the dismissal of a chapter 11 case under certain circumstances. 11 U.S.C. § 1112(a), (b). Section 1112(b) provides that:

\*6 on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate, the court shall convert a case ... or dismiss a case ..., whichever is in the best interests of creditors and the estate, if the movant establishes cause."

11 U.S.C. § 1112(b)(1). Thus, if a movant demonstrates cause, the court must grant relief and determine whether dismissal, conversion, or appointment of a trustee is in the best interest of creditors and the estate.

Although there was no motion pending before the bankruptcy court to convert or dismiss Leeward's bankruptcy case under either § 305 or § 1112(b), a bankruptcy court may dismiss a case sua sponte if there is cause to do so. *Argus Group 1700, Inc. v. Steinman (In re Argus Group 1700, Inc.),* 206 B.R. 757, 763 (E.D.Penn.1997) (collecting cases); *In re A–1 Specialty Gasolines, Inc.,* 238 B.R. 876, 878 (Bankr.S.D.Fla.1999); *C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship),* 113 F.3d 1304, 1312 (2d Cir.1997). The authority of the court to act on its own is contained in Section 105. *Tennant v. Rojas (In re Tennant),* 318 B.R. 860, 869 (9th Cir.BAP2004) (collecting cases). Under § 105, the bankruptcy court has the power to:

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

"Cause" is defined and enumerated (in a non-exclusive list) in § 1112(b)(4). *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 828 (9th Cir.1994). Section 1112(b) "provides the bankruptcy court with the requisite authority to terminate a chapter 11 case based on a showing of unreasonable delay, or continuing losses coupled with the absence of a reasonable likelihood of rehabilitation, or inability to effectuate a plan of reorganization." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.),* 808 F.2d 363, 371 (5th Cir.1987) (en banc), *aff'd* 484 U.S. 365 (1988). The bankruptcy court must evaluate each debtor's viability and rate of progress in light of the "best interest of the creditors and the estate." *Id .* at 372; 11 U.S.C. § 1112(b). Therefore, if the debtor's business is so troubled that reorganization is not viable, a conversion or dismissal may be in the best interests of creditors and the estate. *Id.* at 373.

The bankruptcy court's findings, along with the facts in the record, support the inference that the Plan had no reasonable possibility of being confirmed within a reasonable time. The following facts are undisputed: (1) Leeward filed bankruptcy on the eve of GDR's foreclosure sale and filed its Plan the 90th day after filing bankruptcy, the last day permissible under § 362(d)(3); (2) GDR waited until after that time to file its MRS; (3) Leeward had very limited cash assets and required the approval (which it did not yet have) of postpetition financing in order to implement its Plan; (4) no impaired class of creditors voted in favor of the Plan; (5) GDR, the major (and possibly the only) secured creditor, voted against confirmation and had filed an unopposed motion for stay relief.[FN11] Moreover, the bankruptcy court found that Leeward was "playing around with other people's money for a long time" and was in no

position to effectuate its Plan because the necessary permits had not been submitted for the City's approval.

FN11. GDR asserts that the Class 4C creditor is unsecured.

*7 Under these facts, the bankruptcy court did not abuse its discretion when it dismissed Leeward's bankruptcy case. Furthermore, GDR was entitled to stay relief as a matter of law as a result of the bankruptcy court's determination that Leeward did not have a reasonable possibility of confirming its Plan and because it is undisputed that Leeward had not made monthly interest payments to GDR. As noted earlier, in a single asset real estate case, stay relief effectively terminates the chapter 11 case. Therefore, we agree with GDR that dismissal was no different than the mandatory grant of stay relief.

**D. *Leeward Was Afforded Adequate Notice And Hearing Before Its Case Was Dismissed***

Leeward argues that the bankruptcy court could not sua sponte dismiss the bankruptcy case, or bar Leeward from refiling a bankruptcy case for a period of 90 days, without providing Leeward with notice and an opportunity to respond.

Leeward contends that Rule 1017 prevents the bankruptcy court from dismissing a case without notice and hearing:

(a) Voluntary Dismissal; Dismissal For Want of Prosecution or Other Cause .... a case shall not be dismissed on motion of the petitioner, for want of prosecution or other cause, or by consent of the parties, before a hearing on notice as provided in Rule 2002.

Fed. R. Bankr.P. 1017(a). Rule 2002 requires 20–day notice to the debtor and all creditors and trustees. Fed. R. Bankr.P.2002(a), (k).

However, Rule 1017 is only applicable if the court dismisses a case *on a motion.* "It does not govern the procedure if the court chooses to proceed under its own authority to act sua sponte in accordance with Section 105(a)." *In re Tennant,* 318 B.R. at 870. Leeward's contention that Rule 9014 [FN12] prevents sua sponte dismissal fails for the same reason. Any conflict between the Rules and § 105(a) is resolved in favor of the Bankruptcy Code. *Id.* Therefore, as long as the bankruptcy court followed a permitted procedure under § 105(a) of the Code, the Rules do not prohibit a sua sponte dismissal. *Id.*

FN12. Rule 9014 mandates that contested matters (such as dismissal) "be requested by motion with reasonable notice and opportunity for hearing afforded to the party against whom relief is sought." Fed. R. Bankr.P. 9014.

Section 105(a) empowers the bankruptcy court to enforce the Bankruptcy Code. Both § 305 and § 1112(b) provide for dismissal "after notice and a hearing." 11 U.S.C. §§ 305(a); 1112(b)(1). "Notice and a hearing" is defined in § 102 as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A).

In addition to the statutory requirement of notice, there is a constitutional requirement of due process. *Great Pac. Money Markets, Inc. v. Krueger (In re Krueger),* 88 B.R. 238, 241 (9th Cir.BAP1988). To meet the requirements of due process, notice must be "reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

*8 The Bankruptcy Appellate Panel has held that "a dismissal without notice and an opportunity to be heard [is not] appropriate where substantive issues are to be determined." *In re Tennant,* 318 B.R. at 870. The bankruptcy court here did make substantive findings. It found that Leeward was unable to demonstrate it had any reasonable likelihood of rehabilitation or ability to effectuate a plan of reorganization and, was "playing around with other people's money" by continuing its case to the detriment of its creditors. However, this substantive determination was made in the context of the Confirmation Hearing, which was set with the MRS Hearing, both of which were properly noticed.

Leeward argues that it was "blindsided" by the bankruptcy court's dismissal and that "there were no findings or conclusions entered which warranted the bankruptcy court's abrupt order which circumvented procedural safeguards embedded in the Code and Rules." Appellant's Opening Brief at 4, 19. However, it is difficult to understand how Leeward could have been blindsided by the dismissal given that when Leeward proposed the Plan and set the Confirmation Hearing, Leeward was on notice that the bankruptcy court could make a determination that the Plan did not have a reasonable possibility of being confirmed.

Furthermore, because the Confirmation Hearing was also set with the MRS Hearing, Leeward was on notice that the automatic stay could lift since it had not filed any opposition to GDR's MRS. Leeward's Plan did not have the consent of its major secured creditor and otherwise failed to satisfy the requirements of § 1129(a)(8) and (a)(10) and (a)(11). Leeward had not commenced interest payments to GDR. Thus, Leeward knew or should have known dismissal (or conversion) of the case was inevitable. *See, e.g., United Student Aid Funds, Inc. v. Espinosa,* ––– U.S. ––––, 130 S.Ct. 1367 (2010) (standing for the proposition that the failure to follow a procedural rule is not a denial of constitutional due process where a party has actual notice).

Leeward was afforded the statutory and constitutional due process considerations of notice and hearing because it had notice of the Confirmation Hearing and the MRS Hearing and had the opportunity to present arguments that the Plan had a reasonable likelihood of being confirmed. *See, e.g., Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.,* 139 B.R. 828, 832 n. 5 (W.D.Ky.1992) (stay relief motion requesting "any other relief" and pleadings were sufficient to put debtor on notice that its good faith and possible dismissal were at issue); *In re Townco Realty Inc.,* 81 B.R. 707, 710 (Bankr.S.D.Fla.1987) (dismissed sua sponte on denial of plan confirmation in single asset real estate case when debtor was unable to demonstrate plan had reasonable probability of success); *In re C–TC 9th Ave. P'ship,* 113 F.3d at 1312 (debtor had opportunity to address issue of bad faith raised by motion even if no formal evidentiary hearing was held).

*9 This is not a situation where the bankruptcy court "must be careful not to deny the protection of the Bankruptcy Code to a debtor whose legitimate efforts at financial rehabilitation may be hidden". *In re Strug–Div., LLC,* 375 B.R. 445, 449 (Bankr.N.D.Ill.2007). Nor is it a situation where the debtor should have been afforded the opportunity to demonstrate that its case was legitimate despite being unable to confirm the Plan. *See, e.g., In re Argus Group 1700, Inc.,* 206 B.R. at 761. Leeward is a single asset real estate debtor who did not timely propose a reasonable plan or pay GDR monthly interest payments. As a result, it could not legitimately pursue a reorganization effort over GDR's objection after the 90–day deadline of § 362(d)(3). *See, e.g., In re A–1 Specialty Gasolines, Inc.,* 238 B.R. at 878 (sua sponte conversion after stay relief granted because no reasonable possibility of reorganization remained).

However, the imposition of the 90–day bar to refiling was not properly noticed. The bankruptcy court made no determination at the time it dismissed Leeward's case at the Confirmation Hearing that a bar to refiling was warranted. With no warning that a bar would be instituted and with no opportunity for Leeward to challenge the imposition of the bar, the bankruptcy court failed to provide Leeward appropriate notice. Accordingly, the bankruptcy court abused its discretion when it barred Leeward from refiling for a period of 90 days.

### E. *The Bankruptcy Court Abused Its Discretion When It Did Not Grant Reconsideration Of The 90–Day Bar To Refiling*

Leeward filed a Reconsideration Motion under Local Rule 9013(d)(2)(h) and Rule 9024, which incorporates Fed.R.Civ.P. 60 (Federal Rule 60). Federal Rule 60(b) provides relief from a final judgment or order for reasons including mistake, inadvertence, surprise or excusable neglect; newly discovered evidence; or, any other reason that justifies relief. Fed.R.Civ.P. 60(b)(1), (b)(2), (b)(6).

Leeward contended the bankruptcy court relied on the Larsen declaration, which it alleged provided inaccurate information. Leeward submitted as "new evidence" a declaration from the Assistant Director of Planning, Community and Economic Development for the City stating that the preliminary design and review meeting occurred on February 2, 2010. Leeward contended that as a result of the meeting, the City was expected to approve the restructuring and the application for short-platting the Property for single-family homes. However, the declaration also states that Leeward has not made any formal application to the City to divide the Property or revise its earlier permits.

In any event, this "new evidence" is irrelevant to the bankruptcy court's determination that Leeward failed to present a confirmable Plan. The bankruptcy court determined that regardless of whether a preliminary meeting with the City was scheduled, the permits and approvals for development were not in place in order to effectuate the Plan. More importantly, Leeward had to overcome the insurmountable problem of not having a consenting class of impaired creditors vote for the Plan as required by § 1129(a)(10). Therefore, the "new evidence" was not of "such magnitude that production of it earlier would have been likely to change the disposition of the case." *Feature Realty, Inc. v. City of Spokane,* 331 F.3d 1082, 1093 (9th Cir.2003) (citation omitted).

*10 Leeward also argued it was entitled to relief because the bankruptcy court committed error when it did not provide notice and hearing before the dismissal and bar to refiling. Because we have determined that the Confirmation Hearing and the MRS Hearing provided Leeward appropriate and adequate notice that its case could be converted or dismissed, the bankruptcy court did not err in dismissing Leeward's case sua sponte. However, for the reasons set forth above, the Reconsideration Motion should have been granted with respect to the 90–day bar to refiling.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the Denial Order in part, but VACATE the portion of the Denial Order to the extent that it bars Leeward from refiling bankruptcy for a period of 90 days.[FN13]

FN13. The issuance of this disposition dissolves the stay pending appeal that was granted by order on March 2, 2010.

9th Cir.BAP (Wash.),2010.
In re Leeward Subdivision Partners, LLC
Slip Copy, 2010 WL 6259983 (9th Cir.BAP (Wash.))

---

Judges and Attorneys (Back to top)
Judges
Judges
• Glover, Hon. Thomas T.
United States Bankruptcy Court, Western Washington
Seattle, Washington 98101
Litigation History Report | Judicial Reversal Report | Profiler
• Jury, Hon. Meredith Ann
United States Bankruptcy Appellate Panel, Ninth Circuit
Pasadena, California 91105
Litigation History Report | Judicial Reversal Report | Profiler
• Russell, Hon. Barry
United States Bankruptcy Court, Central California
Los Angeles, California 90012
Litigation History Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler