# UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

IN RE:

Case No.  10-23256

Case No.  10-23257

SYNERGISTIC ENTERPRISES, INC

**FIRST AMENDED**

SUSTAINABLE ENTERPRISES, LLC,

**PLAN(s) OF REORGANIZATION**

**AND DISCLOSURE STATEMENT**

## COMBINED PLAN OF REORGANIZATION
## AND DISCLOSURE STATEMENT

Synergistic Enterprises Inc. and Sustainable Enterprises LLC,  the debtors-in-

possession (hereafter "Debtor" or "SEI"), files this 1st Amended Plan of Reorganization

(hereafter "Plan") and Disclosure Statement as a combined document under the

provisions of Section 1125(f) of the Bankruptcy Code as a Small Business reorganization.

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

The Debtor combine this Plan with a Disclosure Statement to provide to all of Debtors' known creditors that information which is deemed by Debtor to be material, important and necessary for their creditors to arrive at a reasonably informed decision in exercising their right to vote on the acceptance of the Plan.

Prior to the solicitation of votes by the Debtor in favor of this Plan, the Disclosure Statement must be preliminarily approved by the Court with the Court hearing the final adequacy of the Statement at the time of confirmation; the Court's approval means that the Court deems the Disclosure Statement contains the necessary information for the creditors of the Debtor to make an informed judgment whether to vote in favor of the Plan, but the Court is not ruling on the merits of the Plan.

The debtor will solicit your vote for acceptance of the Plan. Your acceptance is important: in order for the Plan to be accepted, at least a majority in number of those claims voting in each class, and at least a two-thirds majority in dollar amount of those claims voting in each class, must vote for the Plan. You should return your ballot to the address given thereon by the date given on the ballot. The Order Approving the Disclosure Statement (enclosed) will state the time and place of the hearing on confirmation of the Plan.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO FUTURE BUSINESS OPERATIONS, VALUE OF PROPERTY, OR THE VALUE OF ANY PROMISSORY NOTES TO BE ISSUED UNDER THE PLAN) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

Plan & Disclosure 2

SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE RECORDS KEPT BY THE DEBTOR ARE DEPENDENT UPON ACCOUNTING PERFORMED BY OTHERS BEYOND THE CONTROL OF THE DEBTOR. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE COMPLEXITY OF THE Debtor' FINANCIAL MATTERS, THE Debtor ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

## BACKGROUND

Mr. Greg Lodwig has been involved with buying and selling lots in Ocean Shores, WA, for over 30 years. Over the last 5 1/2 years Mr. Lodwig has sold 89 lots in Ocean Shores. Mr. Lodwig has always sold lots as "By Owner" and he loves what he does. Starting in February, 2007, Mr. Lodwig and his son Nathan decided to work together. Synergistic Enterprises was incorporated on 2/23/07 to make various purchases in Ocean Shores, all vacant lots, to resell. The company began financing purchases on 12/31/07 and entered into contracts with Mr. Utterback ["Trust Company of America"] to finance 9 separate packages, the last being on 9/19/08. Sustainable Enterprises was formed on 10/27/08 to purchase one package of 15 lots on 12/17/08, also financed by Utterback. There were a total of 10 separate Deeds of Trust of various amounts. There were no new purchases financed after 12/17/08. The total amount loaned on the 10 separate Deeds of Trust was $1,187,102.45. To date Mr. Utterback has been repaid $885,140.88 plus additional loan fees of $97,728.61 for a total of $982,869.49 over the last 3 years. 86 lots

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

were purchased of which 38 remain unsold, an excellent result. When each of the 48 lots were sold Mr. Utterback would collect a large release clause amount and he would credit whichever Deed of Trust it came out of and provide escrow with a 'Partial Reconveyance of Deed of Trust.'

Things changed in the Debtor's final package purchase on 12/17/08. The Debtor financed 15 lots in that purchase with Mr. Utterback and the Debtor bought two or three lots from the seller with personal funds. At closing, the Debtor noticed that Mr. Utterback had charged his usual 6% loan fee on an additional $25,000.00 over the $155,000.00 lent, or $180,000.00 (see attachment). The Debtor called Mr. Utterback to point this out thinking it might have been an honest mistake. Mr. Utterback said that it wasn't a mistake and that he was angry that the Debtor had bought the other lots with the Debtor's personal funds instead of borrowing from Mr. Utterback for the purchase. The Debtor told Mr. Utterback that what he had done was illegal and unethical; that the Debtor was not under any such an obligation; and, that Mr. Utterback's logic didn't make any sense. Mr. Utterback cursed at the Debtor and hung up. Shortly thereafter, the Debtor met with Mr. Utterback. The Debtor told Mr. Utterback that the Debtor would concentrate on selling lots in the particular Deeds of Trust that were near payoff to free up the remaining lots in those DOT packages. That way the Debtor could make enough profit on the remaining lots free of release clauses to work his way out of the debt relationship with Mr. Utterback. Mr. Utterback agreed with the concept. Afterwards, Mr. Utterback raised his 'Wrap Fee' on the Debtor's contract sales from $1,000.00 to $3,000.00 without pre-notice before the next closing. This made it much more difficult to sell the remaining lots on real estate contracts.

Over the next eighteen months, the Debtor was able to sell nineteen lots financed by Mr. Utterback, which allowed the Debtor to pay down his debt with Mr. Utterback considerably. During that period, the Debtor asked Mr. Utterback a number of times to

Plan & Disclosure 4

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

provide the Debtor with an accounting of remaining balances in the different Deeds of Trust so that the Debtor could see where he was at. Mr. Utterback never provided the requested figures. In March of 2010, the escrow company told the Debtor that they received the 'Partial Reconveyance Form' from Mr. Utterback for the sale they were processing. The Debtor was told that he should contact Mr. Utterback to see if the Deed of Trust had been paid off in full and if so the escrow company would change the filing to a 'Full Reconveyance.' This would have released two unsold lots and one lot sold on a contract from that Deed of Trust. When the Debtor contacted Mr. Utterback he said he would check his records and if the DOT was paid in full he would obviously reconvey. Two weeks went by with no response, so the Debtor called again. Mr. Utterback told the Debtor that if Mr. Utterback reconveyed, the Debtor would concentrate on selling the Debtor's freed up lots instead of any remaining that were still under contract. The Debtor response was that Mr. Utterback was right since the Debtor had used up all of his savings, (about $100,000.00) during the previous year just to get to this point since Mr. Utterback's release clauses were too high. The Debtor said that Mr. Utterback was required by law to reconvey when paid in full. Mr. Utterback said that he would call the Debtor in a couple days. After two weeks of no response, the Debtor was forced to draw up his own accounting which showed that the DOT had been overpaid. Also the Debtor's records were showing that two other DOT had also been paid off in full. The Debtor called Mr. Utterback after he received the Debtor's figures, was told that Mr. Utterback would not reconvey.

The Debtor's response was that if Mr. Utterback would not provide payoff figures or reconveyances when paid in full then the Debtor could no longer keep paying Mr. Utterback until there was a resolution. Mr. Utterback hung up and has been uncooperative in communicating since then. The Debtor has sent letters requesting payoff figures, several settlement offers and has attempted to reason with the three separate attorneys

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

Plan & Disclosure 5

who have come and gone representing Mr. Utterback since then.

Basically, the Debtor has a loan with a lender (Mr. Utterback) which locks its doors when it sees the Debtor coming. The Debtor's real estate attorney set up a deposition to question Mr. Utterback. The Debtor's attorney was contacted shortly before the date of the deposition and was told that Mr. Utterback would be willing to meet with a mediator and try to work out a settlement that would work for both parties if the Debtor would drop the deposition. The Debtor agreed and the date for mediation was set for the first week of October. When the Debtor arrived Mr. Utterback demanded all the remaining properties and contracts, valued at roughly $1,500,000.00, in order for Mr. Utterback to release the remaining debt that he now said was approximately one-third the value of the assets demanded. The mediator apologized to the Debtor and the Debtor's attorney and that was that. Eventually, Mr. Utterback served the Debtor with a foreclosure notice and the Debtor was forced to file a Chapter 11 bankruptcy.

Mr. Utterback has told the Debtor that he "will not rest until he destroys the Debtor and the Debtor's son." Mr. Utterback has said that it is personal with him. It is obvious that it would be impossible for Mr. Utterback and the Debtor to work together. The Debtor would not have filed for reorganization without first trying to resolve this in every way possible. The Debtor really has tried. Further, the Debtor believes that a property settlement to pay Mr. Utterback in full is the obvious solution. The Debtor has attached records showing sales over the last two years or so in order to show the ratio of sales prices to the assessed value. Presently, the Debtor has two pending sales, one at 82% of the assessed value, the other at 72%. The last lot the Debtor sold was at 69% of assessed value on an all cashout sale. The Debtor badly wants to wash his hands of the ordeal of dealing with Mr Utterback and is sure Mr. Utterback feels the same.

## I. DEFINITIONS AS USED IN THIS PLAN

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

As used in the Plan and Disclosure Statement the following terms shall have the respective meanings specified below:

1.1     Administrative Creditor: Any person entitled to payment of an administrative expense.

1.2     Administrative Expense: Any cost or expense of administration of the Chapter 11 case allowed under § 503(b) of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor.

1.3     Allowed Claim: Any claim against the Debtor, as of the petition date, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim; or, if no claim is filed, then as listed in the Debtor's schedules if liquidated and undisputed, then the amount listed therein.

1.4     Class 1. Cost and expenses of administration as defined in Section 507(a)(1) and (a)(2) of the Bankruptcy code for which application for allowance or a claim is filed as the same are allowed and approved by the court; and post-petition normal payables.

1.5     Class 2. Claims entitled to priority by §507(a)(3), §507(a)(4), and §507(a)(5) of the Bankruptcy Code, as the same are allowed and approved by the court. These are employee wage pension, and consumer deposit claims.

1.6     Class 3. Claims entitled to priority by §507(a)(8), as same are allowed. These are tax claims.

1.7     Class 4(A) and (B). Secured creditors on real property.

1.8     Class 5. Claims of all creditors of the debtor whose claims are not in Classes 1 through 4, in the amount their claims are allowed by the court, including, but not limited to, creditors whose claims may arise out of the rejection of executory contracts, and other general unsecured debts.

1.9     Class 6. Class 6 is the debtors, Synergistic Enterprises, Inc. and Sustainable Enterprises, Inc.

Plan & Disclosure 7

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

1.10   <u>Chapter 11 Case.</u> The case commenced under Chapter 11 of the Bankruptcy Code, and pending in the Bankruptcy Court under the above cause number.

1.12   <u>Claim:</u> Any right to payment from the individual Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matures, unmatured, disputed, undisputed, secured or unsecured.

1.13   <u>Confirmation Date:</u> The date upon which the Bankruptcy Court shall enter the order confirming the Plan or as it may be amended.

1.14   <u>Confirmation Order:</u> An order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code and which is not then subject to a pending motion to clarify, vacate, rehear, modify or amend.

1.15   <u>Contested Claim:</u> Any claim as to which the Debtor or any party in interest has interposed an objection in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, which objection has not been determined by an order or judgment that is no longer subject to appeal or certiorari proceeding or as to which to appeal or certiorari proceeding is pending.

1.16   <u>Creditor:</u>  Any person that has a claim against the Debtor that arose on or before the petition date.

1.17   <u>Effective Date:</u>  The Effective Date shall be the first business day which is at least twenty (20) days following entry of the Confirmation Order on the docket by the Bankruptcy Court.

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

# II. PAYMENT OF CLAIMS

   **A. CLASS 1:** ADMINISTRATIVE POST-CHAPTER 11 EXPENSES.  Except for those administrative expenses incurred in the ordinary course of the Debtor's business which have been paid pursuant to their terms and not under this Plan, each allowed administrative expense shall be paid 100% of their claim, including U.S. Trustee's fees, and attorney fees to Vortman and Feinstein.  Administrative costs are approximately $5,000.00.  These fees are the responsibility of the Debtor and shall constitute a capital charge against the members of the Debtor if not paid from the sales of the properties of the estate as proposed in the Plan.  The Debtor shall be responsible for timely payment of the fees incurred pursuant to 28 U.S.C. 1930(a)(6); after confirmation, until the case if close, the Debtor shall serve on the UST each month a financial report while the case remains open, which shall include a statement of all disbursements made during the course of the month, whether or not pursuant to the plan.

   US Trustee's fees are being paid and shall be timely paid as long as the estate remains open.   Any unpaid fees shall be paid in full on the effective date of the Plan.

   **B. CLASS 2:** PRIORITY PRE-PETITION WAGE CLAIMS. The holder of an allowed claim in Class 2, which are priority creditors holding claims for wages, consumer deposits, and certain union/insurance benefits, shall be paid 100% of their allowed claim, in full, ninety days after the effective date of the plan. There are no known Class 2 creditors.

   **C. CLASS 3.** PRE-PETITION TAX CLAIMS. Class 3 creditors are taxing agencies and said priority creditors, if any, shall be paid in full, 100% of their allowed claim, in equal monthly pro-rata payments, commencing on the 15th day of the first full

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

month after the effective day of this Plan, with simple interest on the declining balance fixed as of confirmation at the rate of interest set forth under 26 USC §6621 and §6622, from the date of the petition for relief herein, over a period of not to exceed 72 months from when the taxes each first became due. Class 3 claims are not otherwise dischargeable, and the claims herein shall include pre-petition penalties and interest that were accrued prior to the filing of these proceedings, but shall not include any post-petition penalties. These are priority tax claims and are not impaired.   If necessary, any remaining balances due at the end of the term herein shall balloon and be paid in full no later than 60 months following the filing of the petitions herein, the last date the claims can be paid under §1129(a)(9)(C).  There are real property taxes due, and those will be paid from each sale on a pro-rata basis until paid in full.

**CLASS 4:**  SECURED CREDITORS.

A.  Class 4A.   Trust Company of America.  The Debtor shall transfer the following property to Trust Company of America, in full satisfaction of its debt under Section 506 of the Bankruptcy Code and this Plan.  This transfer shall fully satisfy the existing Notes and Deeds held by the Claimant currently on the entire properties owned by the debtor.  The Debtor asserts that the value of that section of property is equal, or greater, than the amount owed to Trust Company of America, and the transfer of the properties on the effective date of the Plan shall fully satisfy this claim.

///

///

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

Following the transfer of the property, Trust Company of America will reconvey the Notes and Deed of Trust currently secured on the balance of the property (as shown in Exhibit A) owned by the estate. The property transferred to Trust Company is:

| Property Address | Parcel Number | Assessed Value |
|---|---|---|
| 1. 804 Anchor Ave | 090100408400 | $50,000.00 |
| 2. 835 Anchor Ave | 090100412000 | $50,000.00 |
| 3. 164 S Port Loop SW | 090700071700 | $35,000.00 |
| 4. 252 Calawah | 091700027700 | $35,000.00 |
| 5. 132 Calawah | 091700030100 | $35,000.00 |
| 6. 148 Calawah | 091700029700 | $35,000.00 |
| 7. 269 Ensign | 090300048600 | $30,000.00 |
| 8. 165 S Narwhal Loop | 090700060300 | $35,000.00 |
| 9. 375 Snahapish | 091900003900 | $33,000.00 |
| 10. 379 Snahapish | 091900004000 | $33,000.00 |
| 11. 655 Point Brown SW | 092100015600 | $30,000.00 |
| 12. 870 Mount Olympus | 092700048000 | $30,000.00 |
| 13. 157 Goldeneye | 093101700400 | $27,000.00 |
| 14. 163 Point Brown SW | 090700056600 | $35,000.00 |
| 15. 151 Seagate | 092300070100 | $30,000.00 |
| 16. 542 Ocean Shores Blvd. | 091700010000 | $45,000.00 |
| 17. 359 Duck Lake NE | 094900206500 | $32,000.00 |

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

Plan & Disclosure 11

| | | |
|---|---|---|
| 18. 220 Duck Lake SE | 04900302100 | $32,000.00 |
| 19. 254 Duck Lake NE | 094900500300 | $32,000.00 |
| 20. 218 Duck Lake NE | 094900500900 | $32,000.00 |
| 21. 585 Sunset | 095101203100 | $32,000.00 |
| 22. 923 Beachcomber | 093101702900 | $27,000.00 |
| 23. 828 Teal Ct. | 092700046500 | $30,000.00 |
| 24. 640 Ocean Shores Blvd. | 092100004700 | $50,000.00 |
| 25. Torrisdale | 093100601800 | $27,000.00 |
| 26. 105 Sunrise | 094900305600 | $48,000.00 |
| 27. 256 Clover Creek | 090300051400 | $30,000.00 |
| 28. 708 Island Circle | 092700027800 | $30,000.00 |
| 29. 472 Hilo Ct. | 094100400400 | $35,000.00 |

Total Assessed Value $1,005,000.00

Estimated debt: $625,000

Percent of assessed value: 62%

This class is not impaired.


    B. <u>Class 4(B)</u>. Grays Harbor County. This is a claim for real estate taxes. Said taxes are secured by a statutory lien on the debtor's real properties. To the extent that the claim is on property of the estate that is retained after the transfer of the properties to Class 4A creditor above, then said remaining claim(s) on said retained properties shall be

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

Plan & Disclosure 12

paid in full on the effective date of the Plan. The claims of the County are nominal, about $175 per lot. This class is not impaired, and shall retain its statutory lien on the debtor's real properties in the same rank and priority as held prepetition pending payment on the effective date of the Plan. After the transfers to the Class 4A creditor, the remaining properties of the debtor shall otherwise be "free and clear", subject only to these tax claims.

C. Class 4(C). City of Ocean Shores. The City of Ocean Shores has a claim for a road LID assessment that is payable over 20 years from 2011. This claim is secured on some of the various remaining properties subject to said road LID assessment. Said lien shall remain on the properties in the same rank, nature, and extent as the City held prepetition. The road LID shall be paid over the 20 year period when due, as due. This claim is unimpaired.

CLASS 5: GENERAL CREDITORS:

Class 5 creditors are the general unsecured creditors of the Debtor, shall be treated and/or paid a dividend as follows:

There are no general unsecured creditors in the estate.

## III. VALUATION SUPPORT

The Debtor claims that the properties above have a fair market value equal to or greater than the debt owed to the Class4(B) (Trust Company of America) pursuant to the

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

Plan & Disclosure 13

terms of the Promissory Note and interest.  To support such a claim, the Debtor offers the following support.

Attached Exhibit B lists all actual sales in Ocean Shores of vacant land sales for the prior two years.  The Exhibit lists the Assessed Value [A.V.] of each lot sale, and lists the actual sales price the property was sold for, and then the percentage of the Assessed Value that the sales price represents.  The average <u>actual land sales</u> in Ocean Shores was in excess of 71% A.V. to actual sales price.  The transfers of property under this Plan compute a value of just 62% A.V. to actual sales price  to provide a "cushion" of about $100,000+ to the secured creditor.

**CLASS 6: EQUITY SECURITY HOLDERS**. The equity security holder(s) of the Debtor, being the various members in the LLC,  shall retain their membership interests in the Debtor limited liability LLC as they held prepetition.

## IV. <u>LIQUIDATION ANALYSIS</u>

The Debtor have insufficient cash assets to pay the creditors in full. All of the Debtor's assets have been listed on the schedules filed herein, and the monthly reports to the court. There should be sufficient funds available to general creditors at least as much as they would have received in a Chapter 7 liquidation to pay this Class in full, including administrative and priority tax claims. The value of the total of the lots of the estate exceeds the total debt and thus this is a 100% Plan. The Debtor asserts that the plan meets the elements necessary for confirmation under Section 1129(b) of the Bankruptcy Code.

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

# ARTICLE V.

## PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSES

5.1    <u>Full Payment:</u> Except for those administrative expenses incurred in the ordinary course of the Debtor's business which have been paid pursuant to their terms and not under this Plan, each allowed administrative expense claim shall be paid in full upon the Effective Date, unless otherwise agreed by the creditor. This class includes any unpaid U.S. Trustee's fees, and any unpaid post-petition tax liabilities incurred post-petition.

## ARTICLE VI.

## <u>EXECUTORY CONTRACTS</u>

6.1    <u>Rejection of Executory Contracts:</u> All holders of executory contracts issued by the Debtor shall be assumed [these are purchase agreements for the various lots] unless otherwise specifically accepted in this Plan.  All post-petition  contracts, including the loan agreements with Inward Bound are accepted as of confirmation; but, however, any pending offers brought to the debtor. prior to confirmation will be honored, and processed through the normal procedures for acceptance, court approval and closing.

## ARTICLE VII.
## <u>PROCEDURE FOR RESOLVING CONTESTED CLAIMS</u>

7.1    <u>Time for Objections to Claims:</u> Objections to claims shall be made by the Debtor, or any party in interest, and served upon each holder of such claim to which objections are made and filed with the Bankruptcy Court within 60 days after the entry of the

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

order of confirmation of this plan.

7.2    Prosecution of Objections to Claims:  The Debtor, and/or the party filing the objection, shall litigate to judgment, settle or withdraw objections to contested claims.  This Plan specifically reserves the right of the Debtor, or any party in interest, to object to any claim, whether filed or unfiled ["deemed allowed"], and whether said claim was listed by the Debtor as disputed or undisputed.

7.3    Notice of Settlements:  The Debtor shall provide notice to all secured creditors and the five largest unsecured creditors measured as of the petition date, of all proposed settlements of objections to claims against the estate involving secured claims, or unsecured claims in excess of $5,000.

7.4    Closing of Settlements:  Ten days after notice of any settlement, the Debtor may close such settlement absent timely objection by a party in interest.  In the event of objection, the debtor shall obtain a hearing on notice to the objecting part(ies).

## ARTICLE VIII.  MISCELLANEOUS PROVISIONS

8.1    Termination of the Plan:  The Plan shall terminate and otherwise cease to be of any force and effect upon satisfaction of all terms hereof.

8.2    Modification of the Plan:  The Plan proponent may propose amendments or modifications to the Plan at any time prior to confirmation.  After confirmation, the Debtor may, with leave of court, and so long as it does not materially or adversely affect

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

the interests of creditors or other parties in interest, remedy any defect or omission, or

reconcile any inconsistency in the Plan, in the order confirming the Plan, in such manner

as may be necessary to carry out the purposes, intent and effect of the Plan.

        8.3    <u>Automatic Stay</u>:  The automatic stay provided by 11 U.S.C. § 362 shall

remain in full force and effect until the effective date of the plan, at which time all

property of the estate is transferred to the Debtor and the Debtor is discharged herein, and

the stay is released under Sections 362(c)(1) and (c)(2)(c).

        8.4    Substantive Consolidation: Upon confirmation of the Plan, the two

corporate entities shall be substantively consolidated, and shall operate post-confirmation

as a single corporate entity of Synergistic Enterprises, Inc.


## IX.  **PROVISIONS FOR EXECUTION OF PLAN**

        9.1    <u>Disbursement of Funds</u>:  Upon the Effective Date, the Debtor shall

distribute in cash the payments provided for herein to the extent of cash collected.  The

Plan will be funded from the ongoing operations of the Debtor, and cash flow as set forth

in the attached projections.  All distributions on account of priority taxes or general

unsecured claims shall only be made either upon entry of a court order, or lack of

objection from any party in interest, following written notice to all unsecured creditors

and at least 10 calendar days' opportunity to object, which notice shall describe with

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

reasonable specificity, the source and amount of funds available, and the specific claims and amounts upon which the disbursement will be made.

9.2 <u>Management</u>. Gregory Lodwig shall act as may be reasonably necessary or appropriate on behalf of the Debtor to effect consummation of the Plan.

## ARTICLE X. <u>RETENTION OF JURISDICTION</u>

This Court shall retain jurisdiction of this Chapter 11 case pursuant to provisions of the Bankruptcy Code, until the proceedings are closed, and, specifically, shall retain jurisdiction to hear or determine the following matters:

1. To enable the Debtor to consummate any and all proceedings which may be brought prior to or subsequent to the Order of Confirmation, to avoid or set aside liens or encumbrances, to object to claims or to the allowance thereof, to recover any preferences, transfers, assets (including accounts) or damages as entitled under the applicable provisions of the Bankruptcy Code or other federal, state, or local law, and to continue all related contested matters or adversary proceedings pending on the confirmation date or filed in the Court thereafter.

2. To classify, allow or disallow claims and direct distribution of funds under the Plan and to adjudicate all controversies concerning the classification, treatment or allowance of any claim.

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

3.  To enforce performance of the Plan, including without limitation, execution and delivery by the debtor or reorganized debtor, of such documents as are required by this Plan.

4.  To hear or determine all claims arising from the rejection of executory contracts, including leases, and to consummate the rejection and termination thereof.

5.  To liquidate damages in connection with any disputed, contingent or unliquidated claim.

6.  To recover all assets and properties of the estate wherever located.

7.  To hear and determine matters concerning state, local and federal taxes.

8.  To hear and determine such other matters and make such Orders as are necessary and appropriate to carry out the provisions of the Plan, including without limitation, motions to sell property and any controversies relating to disbursements under this Plan.

9.  The plan shall be substantially consummated upon the distributions and delivery of documents to be made on the effective date of the plan. Notwithstanding substantial consummation, the case shall remain open pending the earlier of (a) sale of all the debtor's property, or (b) the satisfaction of all allowed secured claims.

## ARTICLE XI
## TRANSFER OF TITLE AND ADMINISTRATION AND TAXES

Notwithstanding the retention of jurisdiction by the court as provided in Paragraph

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

XII above, upon confirmation of the Plan by the court, title to the West Property shall be conveyed, free and clear of all liens and encumbrances, to GDR. All remaining of the estate, all causes in action, and all rights of the Debtor-in-possession, shall vest in the Debtor.

Confirmation of the plan shall discharge the Debtor from any debt that arose before the date of confirmation, as provided in Section 1141(d)(1); except that debts not otherwise discharged, such as priority tax debt under Class 3, shall be discharged upon consummation of the Plan.

The debtor will use its basis in the property, including improvement costs, towards the sales of the properties herein in sequential order, thus using its full basis on all of the property development towards each lot sale in order; such that it is anticipated that there will be no capital gains realized or taxes due on the first eight or nine sales, leaving only the last one or two lots of the debtor with no basis, and thus those sales would be charged with any capital gains, if any, which shall be payable by the debtor from unencumbered funds.

**ARTICLE XII**
**ADDITIONAL PROVISIONS APPLICABLE**
**TO ALL CLASSES CREATED UNDER THIS PLAN OF ARRANGEMENT**

12.1    The payments, distributions and other treatments provided in respect of each allowed claim and allowed interest under this Plan of Arrangement shall be in full

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

and complete satisfaction, discharge and release of such allowed claims and allowed interest, except insofar as may be expressly provided otherwise under any applicable terms of this Plan, and Debtor shall be discharged of any portion of any allowed claim or interest not provided to be paid under this Plan.  Non-dischargeable priority tax obligations shall not be discharged until paid in full under the terms of this Plan.

12.2    Notwithstanding any other provisions of the Plan providing for the timing of payment or distribution of any consideration hereunder, payments and distributions in respect of any claim or interest which at such date or time is disputed, unliquidated, or contingent, other than secured claims, shall not be made until such claim or interest becomes an allowed claim or allowed interest, whereupon such payments and distributions shall be made promptly together with any interest provided to be paid on such claim under the terms of this Plan.

## ARTICLE XIII.  MISCELLANEOUS HEADINGS

The headings of this Plan are for convenience of reference only and shall not limit or otherwise effect the meaning thereof.

## ARTICLE XIV.  NOTICES

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by telex or other telegraphic means or mailed by first class or certified mail, return receipt requested:

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

(a)     If to the proponent of the Plan then to Larry B. Feinstein, Vortman & Feinstein, 500 Union Street, Suite 500, Seattle, Washington, 98101.

(b)     If to a holder of an allowed claim or allowed interest, at the address set forth in its allowed proof of claim or proof of interest, or, if none, at its address set forth in the schedule prepared and filed with the court pursuant to the Rule 1007 (b).

(c)     Notice shall be deemed given three days after mailing or transmitted.  Any person may change the address at which it is to receive notices  under the Plan by sending written notice pursuant to the provisions of this section to the persons being charged with the knowledge of such change.

## ARTICLE XV.  ARTICLE REFERENCES

Unless otherwise specified, all references in the Plan to Sections and Articles are to sections and articles of the Plan.

## ARTICLE XVI.  RESERVATIONS OF RIGHTS

Neither the filing of this Plan nor any statement or provisions contained herein or in the accompanying Disclosure Statement, as may be amended from time to time, nor the taking by any creditors or any action with respect to the Plan shall:

(a)     Be or be deemed to be an admission against interest, and

(b)     Until the date of distribution of each creditor's entitlement under this Plan or Arrangement, be or deemed to be a waiver of any rights which any creditor might have

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

against the Debtor or any of the Debtor's properties or any other creditor of the Debtor, or

a waiver of any rights which the Debtor may have against any creditor or party in interest,

and until such time as creditors claims are actually paid in accordance with this Plan or

Arrangement, such rights are specifically reserved.

## ARTICLE XVII.  DEFAULT

In the event of default, the creditor(s) to whom said default has occurred shall give the

Debtor 30 days notice of default and opportunity to cure.  If said default is not cured within

said period, the creditor shall be entitled to enforce such creditor's entitlement under this

Plan in any court of competent jurisdiction. Further, the holder of an allowed claim pursuant

to Section 507(a)(8) of the Bankruptcy Code shall be entitled to automatically resume

collection activities against the Debtor, without first obtaining this court's approval, if the

Debtor fails to cure any default in repayment under the confirmed plan within thirty (30)

days of receiving written notice of default from such holder.  Secured creditors whose loans

are restructured under this Plan shall treat said loans as current and treat said obligations as

an ongoing amortizing obligation.  In the event of default to a secured creditor, the creditor

occasioning said default shall give the Debtor 30 days notice of default and opportunity to

cure;  if said default is not cured within said period, the creditor shall be entitled to relief

from the stay under this Plan, and may enforce any state law foreclosure or collection rights

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355

Plan & Disclosure 23

that may exist in the security documents between the parties.  There are no known adverse

tax consequences as a result of this Plan.


## XVIII.  CONCLUSION

The Debtor thus requests the creditors to accept its Plan and Reorganization

effort.

DATED this___27____day of April, 2011.


/s/ Larry B. Feinstein
_____
Larry B. Feinstein #6074
Attorney for Debtor-In-Possession

Vortman & Feinstein
500 Union Street, Ste 500
Seattle, WA 98101
206.223.9595
fax: 206.386.5355